UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMANTHA K.,

                         Plaintiff,                      **DECISION AND ORDER**
       v.
                                                 1:23-CV-00534 EAW

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

## INTRODUCTION

Represented by counsel, plaintiff Samantha K. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 5; Dkt. 10). For the reasons discussed below, Plaintiff's motion (Dkt. 5) is denied and the Commissioner's motion (Dkt. 10) is granted.

## BACKGROUND

Plaintiff protectively filed her application for SSI on November 12, 2014. (Dkt. 3 at 24, 72).[1] In her application, Plaintiff alleged disability beginning November 27, 2002.

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(*Id.* at 24, 73).  Plaintiff's application was initially denied on November 3, 2015.  (*Id.* at 177).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Brian Kane, who issued an unfavorable decision on September 25, 2018.  (*Id*. at 25).  On June 28, 2019, the Appeals Council vacated the unfavorable decision and remanded for further evaluation.  (*Id.*).  After a second hearing, ALJ Kane issued another unfavorable decision on March 10, 2021.  (*Id.*).  On March 23, 2022, the Appeals Council vacated the second unfavorable decision and again remanded for further evaluation.  (*Id.*).

A third hearing was held before ALJ Bruce Fein on August 2, 2022.  (*Id*. at 51-71).  At this hearing, Dr. George Bell testified as a medical expert.  (*Id*. at 56-60).  Also at this hearing, Plaintiff's counsel modified Plaintiff's application to seek a closed period of disability from November 12, 2014, to April 1, 2021.  (*Id*. at 61-64).  On September 28, 2022, ALJ Fein issued an unfavorable decision.  (*Id.* at 22-50).  Plaintiff requested Appeals Council review; her request was denied on April 17, 2023, making ALJ Fein's determination the Commissioner's final decision.  (*Id.* at 9-15).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or

medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ[2] applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

---

[2]    References to "the ALJ" and "the ALJ's decision" refer to ALJ Fein and his September 28, 2022 decision, which is the Commissioner's final determination.

that Plaintiff had engaged in substantial gainful activity from April 1, 2021, to the present, but that there had been a continuous 12-month period during which she did not engage in substantial gainful activity.  (Dkt. 3 at 28-29).  The ALJ addressed his remaining findings to the period during which Plaintiff did not engage in substantial gainful activity.  (*Id*. at 29).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: major depressive disorder; generalized anxiety disorder; borderline intellectual functioning; and status post-traumatic brain injury.  (*Id.*).  The ALJ further found that Plaintiff's migraines, acne, and obesity were non-severe.  (*Id*. at 29-30).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 30).  The ALJ particularly considered the criteria of Listings 11.18, 12.04, 12.06, and 12.11 in reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following additional nonexertional limitations:

> [Plaintiff] has visual limitations in that she is limited to occupations requiring no depth perception.  Her work is limited to simple, routine, and repetitive tasks.  She can have frequent interaction with coworkers, supervisors, and the public.  She can work in a low stress job defined as only occasional decision making, changes in the work setting, and judgment required on the job.

(*Id.* at 32).  At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 38).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there

were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of office helper, merchandise marker, cashier II, and folder.  (*Id.* at 38-39).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 39).

## II.    The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner, arguing that the ALJ failed to apply the treating physician rule or to give good reasons for giving less than controlling weight to the opinions of Plaintiff's treating neurologist Dr. Mary Dombovy.  (Dkt. 5-1 at 1).  The Court is unpersuaded by this argument, for the reasons that follow.

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record.  Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]"  20 C.F.R. § 416.927(c)(2).  Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he "must consider various factors to determine how much weight to give to the opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).   These factors include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating

- 6 -

physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a specialist.  *Id.*

If the ALJ neglects to expressly apply the requisite factors, it is considered a "procedural error."  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted).  However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed."  *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion."  20 C.F.R. § 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that the Commissioner will always give good reasons for the weight given to a treating source opinion. . . .  Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." (quotation, citations, and internal quotation marks omitted)).

In this case, Dr. Dombovy opined in August of 2016 that Plaintiff was—among other things—very limited in attention and concentration, making simple decisions, and functioning in a work setting at a consistent pace.  (Dkt. 3 at 1147, 1152; Dkt. 4 at 290).  In August of 2018, Dr. Dombovy opined that Plaintiff would require unscheduled breaks due to emotional breakdown, was incapable of performing even low stress jobs, and would likely be absent from work more than four days per month due to her impairments.  (Dkt.

3 at 1300, 1304, 1306). The ALJ gave these opinions limited weight, explaining that they were inconsistent with Plaintiff's recent normal neurological evaluations, the mental status evaluations of record, and Plaintiff's reported activities of daily living. (*Id*. at 35-36). The ALJ further noted that Dr. Dombovy, a neurologist, saw Plaintiff only once every two years, which was "not consistent [with] the degree of restrictions outlined in [her] assessment." (*Id*. at 36; *see* Dkt. 4 at 3 (Dr. Dombovy's treatment notes from August of 2018 noting that Plaintiff "was last seen in 2016" and that "[b]efore that she was last seen in 2014")). Finally, the ALJ noted that Dr. Dombovy's opinions were "contradicted by the objective evidence in [the] record," including counseling and neurology records showing only mild impairment, and improvement with treatment. (*Id*. at 36-37).

Plaintiff argues first that the ALJ failed to consider the requisite factors when assessing Dr. Dombovy's opinions. (Dkt. 5-1 at 12). This argument lacks merit. The ALJ expressly noted that Dr. Dombovy was Plaintiff's neurologist, and also expressly discussed the frequency and nature of her treatment. (Dkt. 3 at 29, 35-36). The ALJ also considered whether the medical evidence, including Dr. Dombovy's own records, supported the opinions, and whether the opinions were consistent with the evidence as a whole. (*Id*.). The fact that the ALJ did not weigh the factors the way that Plaintiff thinks he should have does not mean they were not considered.

The ALJ further provided good reasons for affording Dr. Dombovy's opinions less than controlling weight. The ALJ explained that the severe limitations in Dr. Dombovy's opinions were inconsistent with the medical evidence of record showing only mild impairment. This evidence included: an evaluation by psychologist Dr. Yu-Ying Lin in

October of 2015 where Plaintiff demonstrated only mild impairment in attention and concentration and memory, while also exhibiting coherent and goal directed thought processes and fair insight and judgment; Dr. Dombovy's own treatment records describing Plaintiff's comprehension and attention as "normal"; the opinion of Plaintiff's treating therapist, who saw her weekly and opined in May of 2018 that she had an "unlimited or very good" ability to—among other things—"[m]aintain attention for [a] two hour segment" and "[d]eal with normal work stress"; and treatment records from 2018 in which Plaintiff's psychiatrist assessed her attention span as within normal limits.  (*See, e.g.,* Dkt. 3 at 999-1000, 1216-18; 1257; Dkt. 4 at 4).  Further, Dr. Bell, who testified as a medical expert at the final hearing, opined that Plaintiff had only a moderate impairment in concentration and had a "significant ability to do simple repetitive tasks."  (Dkt. 3 at 59).  "[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Halloran*, 362 F.3d at 32.

The ALJ also noted that the severe limitations identified by Dr. Dombovy were inconsistent with Plaintiff's activities of daily living, including the fact that she was ultimately able to return to substantial gainful activity in April of 2021.  (Dkt. 3 at 35-36).  Plaintiff argues that the ALJ should not have taken into account her return to employment, because "her ability to work outside the relevant period [was] simply less relevant to this analysis, making this not a good reason."  (Dkt. 5-1 at 14).  However, it is clear from the ALJ's discussion that he was focused on Plaintiff's employment during the closed period at issue, wherein she "engaged in a variety of work activity, including as cashier, busser,

[and] babysitter[.]"  (Dkt. 3 at 38).  The Commissioner's regulations expressly permit an ALJ to take such information into account when making a disability determination.  *See* 20 C.F.R. § 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.  We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity.").

Moreover, and as the ALJ noted, Dr. Dombovy's treatment records from 2018 indicated that Plaintiff's "physical neurological exam [was] stable."  (Dkt. 4 at 5; *see* Dkt. 3 at 37).  Under these circumstances, the ALJ was within his discretion to consider the fact that Plaintiff engaged in work activity during the closed period and was ultimately successful in returning to work at the level of substantial gainful activity.  *See Montaldo v. Astrue*, No. 10 CIV. 6163 SHS, 2012 WL 893186, at *13 (S.D.N.Y. Mar. 15, 2012) (finding that the plaintiff's "work history during and after the closed period" supported the ALJ's analysis where the plaintiff worked during the closed period and "at the end of the closed period, . . . was able to resume full time employment").

In sum, the Court finds no reversible error in the ALJ's assessment of Dr. Dombovy's opinions.  The ALJ evaluated Dr. Dombovy's opinions pursuant to the treating physician rule and provided good reasons for affording them only limited weight.  There is accordingly no basis for the Court to disturb the Commissioner's decision.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 3, 2024
         Rochester, New York

- 11 -